IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAMMOTT STEVENSON,                    )
                                      )
            Petitioner,               )
                                      )
      v.                              )   C.A. No. 16-157 (MN)
                                      )
MARIROSA LAMAS, Superintendent and    )
ATTORNEY GENERAL OF THE STATE         )
OF DELAWARE,                          )
                                      )
            Respondents.[1]           )

---

## MEMORANDUM OPINION[2]

Lamott Stevenson. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

November 28, 2018
Wilmington, Delaware

---

[1]     Petitioner Lamott E. Stevenson was in custody at the James T. Vaughn Correctional Center in Smyrna, Delaware when he filed the instant Petition, but was transferred to SCI-Chester in Chester, Pennsylvania in January 2018. (D.I. 32). The Court has amended the caption of the case to reflect this change in Petitioner's custody. *See* Fed. R. Civ. P. 25(d); Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(b), 28 U.S.C. § foll. 2254.

[2]     This case was re-assigned from the Honorable Gregory M. Sleet's docket to the undersigned's docket on September 20, 2018.

Noreika, United States District Judge

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Lamott Stevenson ("Petitioner"). (D.I. 3; D.I. 13). The State filed an Answer in opposition. (D.I. 19). For the reasons discussed, the Court will deny the Petition.

## I.   BACKGROUND

As set forth by the Delaware Supreme Court in Petitioner's post-conviction appeal, the facts leading up to his arrest, convictions, and sentences are as follows:

> On December 15, 2011, [Petitioner] and two accomplices broke into the home of a married couple to rob them. They beat the husband with a crowbar and threatened the wife with a gun. Eventually, the husband was able to get to his own gun and fired some shots, which convinced the robbers to flee. The police later tracked down [Petitioner][3] and arrested him. The State charged [Petitioner] in a twenty-three count indictment.

---

[3]   Petitioner and his two accomplices

> left behind a recently-purchased crowbar, a ski mask, and a jewelry box with bullet holes in it. Police traced the crowbar to a sale that occurred at 3:02 PM on December 15th at the Ace Hardware store in Elton Park, Maryland. Based on the surveillance video from the Ace Hardware store, police discovered that the same person who made the 3:02 PM purchase also purchased a mini-sledge hammer on December 9th. In addition, police found that the customer traveled in a dark Crown Victoria registered to [Bryant] Brown and Johnmika Daniels ("Daniels") of New Castle, Delaware. Officers learned that [Petitioner] was listed as living at the same address as Brown and Daniels.

> In the early morning of December 16th, a patient claiming to be Brown was admitted to the Crozer–Chester Hospital in Pennsylvania for gunshot wounds. Based on the hospital's surveillance video, police determined that the individual treated was [Petitioner] and not Brown. The video also showed Daniels picking up [Petitioner] after he was discharged. Back at the [the married couple's] home, police found blood stains in the street that matched [Petitioner's] DNA.

*Stevenson v. State*, 83 A.3d 738 (Table), 2013 WL 6798899, at *1 (Del. Dec. 20, 2013).

The State offered [Petitioner] a single plea deal on three occasions before his trial. The terms were that if [Petitioner] agreed to plead guilty, identify his co-conspirators, and testify truthfully against them, the State would drop all but six of the counts against him. There would then be a pre-sentence investigation and open sentencing, and [Petitioner] would face between 14 and 117 years incarceration. [Petitioner] rejected the deal each time it was offered.

Trial Counsel and the State knew that [Petitioner] had two felony convictions in Delaware state court. But just before trial, the State learned that [Petitioner] also pled guilty in 2009 in federal district court to possession of a firearm by a felon. Although the State had turned over [Petitioner's] DELJIS criminal history report to Trial Counsel during discovery, the DELJIS report did not include the federal conviction. Trial Counsel did not learn of the federal conviction until sometime during trial. The federal conviction made [Petitioner] eligible for sentencing as an habitual offender under 11 *Del. C.* § 4214(a).

The jury convicted [Petitioner] of two counts of robbery first degree, burglary first degree, assault second degree, conspiracy second degree, two counts of possession of a firearm during the commission of a felony, three counts of possession of a deadly weapon during the commission of a felony, and wearing a disguise during the commission of a felony. Before sentencing, the State filed a petition to have [Petitioner] declared an habitual offender, which the Superior Court granted. The trial judge sentenced [Petitioner] to an aggregate of 192 years incarceration.

*Stevenson v. State*, 132 A.3d 1 (Table), 2016 WL 258783, at *1 (Del. Jan. 19, 2016). The Delaware Supreme Court affirmed Petitioner's convictions and sentences on direct appeal. *See Stevenson*, 2013 WL 6798899, at *4.

In April 2014, Petitioner filed in the Delaware Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 19 at 3). In February 2015, a Superior Court Commissioner recommended that Petitioner's Rule 61 Motion be denied. *See Stevenson*, 2016 WL 258783, at *2. The Superior Court adopted the Commissioner's Report and Recommendation and denied the Rule 61 Motion in May 2015, and the Delaware Supreme Court affirmed that decision. *See Stevenson*, 2016 WL 258783, at *2, *4.

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.    Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51.

## C.    Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[4] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts

---

[4]      A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

them." *Id.* In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Petitioner's timely filed habeas Petition alleges four grounds for relief: (1) the State engaged in prosecutorial misconduct during its rebuttal closing argument; (2) the Superior Court improperly admitted the medical records of "Bryant Brown" during Petitioner's criminal proceeding; (3) there was insufficient evidence supporting Petitioner's conviction for wearing a disguise during the commission of a felony ("WDDCF"); and (4) defense counsel provided ineffective assistance by failing to discover Petitioner's prior federal conviction that made him eligible for habitual offender sentencing. The State filed an Answer to the Petition, arguing that the Claims should be dismissed as meritless and/or procedurally barred. (D.I. 9). Thereafter, Petitioner filed a Memorandum in Support of his Petition (D.I. 14), essentially re-arguing and amplifying his original Claims.

## A.    Claim One: Prosecutorial Misconduct

During Petitioner's trial, the State argued that Petitioner was one of the three assailants who attacked and robbed a married couple in their home, and that he was the patient Bryant Brown who was treated for gunshot wounds at Crozer Hospital on the same night of the home robbery. *See Stevenson*, 2013 WL 6798899, at \*2. In order to prove that Petitioner was the person who presented himself as Bryant Brown, the State presented surveillance footage from the hospital, photo comparisons of Petitioner and Brown, and Brown's medical records from Crozer Hospital. *Id.* After Brown's medical records were admitted into evidence, the State moved to admit a series of photographs taken of Petitioner at the time of his arrest. (D.I. 22-2 at 13). Some of those photographs depicted wounds on Petitioner's body, and the State wanted to argue that the wounds were bullet wounds. (D.I. 22 at 9). Trial counsel objected, stating that it would be improper for the State to make that argument absent expert testimony. *Id.* The trial judge agreed and sustained the objection while expressing the following concerns surrounding the admission of the photographs:

> If you want to put a picture of him on the morning of the arrest, that's different than trying to show close-ups of a hand, which I assume you're trying to get in that there was some attack, assaultive-type wound that he got, but then a series of pictures . . . . If you want to put a picture in that this is what he looked like at the time of his arrest a few months later, that's a totally different purpose and acceptable. It is the other photographs which are trying to depict that he had some bullet wounds without trying – unless there's some medical testimony connected to it. I don't think the medical records in and of themselves do it because in there the medical – I haven't heard how we're going to connect Mr. Brown's medical records to [Petitioner], other than he looks like the guy.

(D.I. 22-2 at 13-14).

> [] The problem is the purpose for which [the photographs] attempting to be introduced is to say to the jury this is the guy, and this is the guy because these are the bullet wounds that Mr. Gallagher inflicted upon him. And I don't know that they are

that. I mean, I can see that they're wounds. I don't know what they are, and I don't know if they're consistent with the person that you're trying to connect to the crime, which is the person who was at Crozer Hospital. So I think if you're able to make a connection between the two, and granted, it would be difficult. But it would then provide some relevance.

If you want to introduce State's Exhibit 200, which is a picture of [Petitioner] when he was arrested, I'll let you do that so that the jury will know in close proximity to when the event occurred this is what he looked like. But I'll leave that up to you. But the rest of the photographs, without some medical connection or relevant connection for identification purposes, I don't think quite makes it yet.

*Stevenson*, 2013 WL 6798899, at *2-3. In short, the trial judge allowed the State to introduce the photographs into evidence but ruled that the State could not argue or claim that the wounds were bullet wounds without supporting medical testimony. (D.I. 22 at 9); *see also Stevenson*, 2013 WL 6798899, at *3.

During its closing rebuttal, the State attempted to rebut defense counsel's argument that Petitioner was not the patient Brown at Crozer hospital, explaining

[t]he patient is a 24-year-old black male who sustained multiple gunshot wounds. He had significant injury to the right hand. You saw the photograph at State's Exhibit 200 of [Petitioner] when he's taken into custody still with bandages on his right hand. Bryant Brown is not the person who was treated at Crozer Hospital that night. Bryant Brown is the name that was given. [Petitioner] knows who Bryant Brown is because he lived with him.

*Stevenson*, 2013 WL 6798899, at *2.

In Claim One, Petitioner asserts that the State engaged in prosecutorial misconduct during its rebuttal closing argument because its reference to Exhibit 200 violated the trial court's ruling that limited how the State could use photographs of the wounds. Although Petitioner presented the instant Claim to the Delaware Supreme Court on direct appeal, the Delaware Supreme Court applied Delaware Supreme Court Rule 8 and only reviewed the argument for plain error due to

Petitioner's failure to object to the closing argument during his trial. *See Stevenson*, 2013 WL 6798899, at *2. By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds. In turn, Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review. *See Campbell v. Burris,* 515 F.3d 172, 182 (3d Cir. 2008). Thus, the Court cannot review the merits of Claim One absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner does not allege any cause for his default of Claim One; in fact, he does not acknowledge that he defaulted the Claim at all. In the absence of cause, the Court need not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim One as procedurally barred from habeas review.

**B.      Claim Two: Improper Evidentiary Ruling**

In Claim Two, Petitioner contends that the trial court abused its discretion by admitting the Crozer Hospital medical records of the patient named Bryant Brown. Petitioner asserts that the medical records were admitted without a proper foundation and without proper authentication, because nobody testified regarding the identity of the person named in the medical records and nothing in the record suggested that the medical records belonged to Petitioner. (D.I. 3 at 7). In his Amended Petition, Petitioner includes a single sentence alleging that the admission of the records deprived him of a fair trial. (D.I. 3 at 7; D.I. 13 at 5).

Petitioner raised Claim Two on direct appeal, arguing that the "trial court erred when it allowed the admission into evidence medical records of Bryant Brown, [because] [t]here was

insufficient foundation for the State to argue that [Petitioner] gave a false name to the hospital and that the medical records were, in fact, [Petitioner's] medical records." (D.I. 22 at 5). After reviewing the Claim under the Delaware Rules of Evidence 401, 402, and 901(a), the Delaware Supreme Court denied the Claim and held that the medical records were relevant and properly admitted. *See Stevenson*, 2013 WL 6798899, at *3-4.

The Supreme Court has repeatedly stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As a general rule, the "admissibility of evidence is a state law issue,"[5] and state evidentiary errors are not cognizable in a federal habeas corpus proceeding unless the error deprived the petitioner of fundamental fairness in his criminal trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974). An error of state evidentiary law deprives a petitioner of fundamental fairness "if the probative value of evidence, although relevant, was greatly outweighed by the prejudice to the accused from its admission." *Albrecht v. Horn*, 485 F.3d 103, 122 n.6 (3d Cir. 2007). Notably, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause,"[6] and "if a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

Here, even though the Amended Petition contains one sentence alleging that the admission of the medical records deprived Petitioner of a fair trial, the essence of Petitioner's argument is that the trial court improperly admitted the records without a proper foundation and without proper

---

[5]     *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

[6]     *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).

authentication. Petitioner presented his argument regarding the admission of Bryant Brown's medical records to the Delaware Supreme Court on direct appeal in the same manner, namely, as an error of state evidentiary law, with one brief reference that the error deprived him of a fair trial. This conclusion is supported by the fact that the Delaware Supreme Court viewed Claim Two as asserting an error of Delaware evidentiary law, and analyzed Claim Two under the Delaware Rules of Evidence. For these reasons, the Court will deny Claim Two for failing to assert an issue cognizable on federal habeas review.

Nevertheless, even if Petitioner's vague "fair trial" reference in Claim Two of his Amended Petition should be viewed as an attempt to assert a federal constitutional violation in this proceeding, the Court concludes that the argument is procedurally barred from habeas review. Although it is not necessary for a petitioner to cite the federal constitution "book and verse" in order to "fairly present" a federal claim to a state court, it is well-settled that a habeas petitioner who "wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment [] must say so." *Duncan*, 513 U.S. at 366 (holding that a claim of "miscarriage of justice" does not qualify as a federal constitutional claim"). The Third Circuit Court of Appeals has clarified this rule, specifically holding that:

> [a petitioner does] not invoke the federal due process guarantee [by claiming that] the admission of the evidence produced a "miscarriage of justice" [or argu[ing] that the [trial process] denied him a "fair trial." Since the Supreme Court found the former language insufficient to give fair notice of a federal due process claim, we are hesitant to attach greater significance to the passing reference to the concept of a "fair trial" on which [the petitioner's] argument rests.

*Keller v. Larkins*, 251 F.3d 408, 413-15 (3d Cir. 2001). Rather, a federal legal claim is "fairly presented" to state courts when there is: (1) reliance in the state courts on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in

11

like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless*, 172 F.3d at 261.

On direct appeal, Petitioner argued that the "trial court erred when it allowed the admission into evidence medical records of Bryant Brown, [because] [t]here was insufficient foundation for the State to argue that [Petitioner] gave a false name to the hospital and that the medical records were, in fact, [Petitioner's] medical records." (D.I. 22 at 5). Petitioner concluded his argument with the statement that the "admission of the medical records deprived [him] of a fair trial." (D.I. 22 at 18).

However, after viewing Petitioner's appellate presentation of Claim Two to the Delaware Supreme Court on direct appeal within the framework provided by the aforementioned precedent, the Court concludes that Petitioner's appellate argument does not satisfy the "fair presentation" component of the exhaustion doctrine. Petitioner's focus on direct appeal was the State's failure to provide any testimony to support its argument that the medical records were actually Petitioner's and that he had falsely provided the name "Bryant Brown" at the hospital. (D.I. 22 at 17). Petitioner only cited one case with respect to the appellate argument concerning Claim Two – *Old Chief v. United States*, 519 U.S. 172 (1997) – and the purpose of the citation was to support Petitioner's assertion that the Delaware Supreme Court should review the trial court's alleged error in admitting the medical records under an abuse of discretion standard.[7] (D.I. 22 at 16).

---

[7]     The main issue in *Old Chief* was the "scope of a [federal] trial judge's discretion under [Federal] Rule [of Evidence] 403, which authorizes exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Old Chief*, 519 U.S. at 180.

Notably, *Old Chief* did not involve any due process or constitutional analysis. Petitioner's "abuse of discretion" argument also does not bring due process concerns to mind or allege "a pattern of facts that is well within the mainstream of constitutional litigation." In addition, the Delaware Supreme Court viewed Claim Two as asserting an error of Delaware evidentiary law, and analyzed Claim Two under the Delaware Rules of Evidence. Thus, to the extent Claim Two should be construed as asserting a federal constitutional violation, the Court concludes that Petitioner did not exhaust state remedies for the argument because he presented the Claim to the Delaware Supreme Court in terms of a state evidentiary error rather than as a violation of a federal constitutional right.

At this juncture, if Petitioner returned to state court in an attempt to obtain further review of Claim Two in a new Rule 61 motion, Delaware Superior Court Criminal Rules 61(i)(1) and 61(i)(2) would preclude the Superior Court from reviewing the Claim because a new Rule 61 motion would be considered time-barred and successive. *See, e.g., Caldwell v. Phelps,* 945 F. Supp. 2d 520, 535 (D. Del. 2013) (finding Rule 61(i)(1) would bar a new Rule 61 motion as time-barred and Rule 61(i)(2) would bar a new Rule 61 motion as successive for an argument that was not asserted in a prior proceeding). Consequently, the Court must treat Claim Two as exhausted but procedurally defaulted, which means that the Court can only reach the merits of the Claim if Petitioner demonstrates cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result in the absence of habeas review.

Petitioner does not allege, and the Court does not discern, any cause for his default of Claim Two. In the absence of cause, the Court will not address the issue of prejudice. Moreover, given Petitioner's failure to provide new reliable evidence of his actual innocence, the miscarriage of justice exception does not apply to excuse Petitioner's procedural default. Accordingly, the Court alternatively denies Claim Two as procedurally barred from federal habeas review.

## C.    Claim Three: Insufficient Evidence Supporting WDDCF Conviction

Next, Petitioner contends that there was insufficient evidence supporting his WDDCF conviction because neither victim specifically identified him as one of the three assailants wearing a mask; no co-defendants, conspirators, or witnesses testified that Petitioner was wearing a mask; and Petitioner's DNA was not on the mask left at the crime scene. Petitioner presented this claim to the Delaware Supreme Court during his direct appeal when he challenged the Superior Court's denial of his motion for judgment of acquittal. The Delaware Supreme Court concluded that the Superior Court properly denied Petitioner's motion for judgment of acquittal for the following reasons:

> The Delaware Code provides: "A person who wears a hood, mask or other disguise during the commission of any felony is guilty of wearing a disguise during the commission of a felony." [ Del. Code Ann. Tit. 11, § 1239]
>
> Although the State at one point suggested that [Petitioner] could be found guilty of WDDCF on the basis of accomplice liability, the record demonstrates that a rational trier of fact could have found that [Petitioner] wore a hood or mask during the burglary. The facts viewed in the light most favorable to the State show that at one point all three assailants wore clothing to disguise their identity during the commission of the burglary.
>
> Michael testified that he saw three people in his house wearing ski masks. Kathleen also testified that she was attacked by a person who, although unmasked, was wearing a dark hood. Kathleen also found a mask left in the house. Taken together, this evidence establishes that a reasonable juror could find that all participating assailants wore some sort of disguise at some point during the burglary. Therefore, [Petitioner's] third claim of error is not supported by the record.

*Stevenson*, 2013 WL 6798899, at *4.

Given the Delaware Supreme Court's adjudication of the Claim Three, the Court must review the Claim under § 2254(d)(1) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law. The clearly

established federal law governing Petitioner's insufficient evidence claim is the rule articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326; *see also Gov't of Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). Reviewing courts cannot make their own credibility determinations when evaluating the sufficiency of the evidence. *See United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985). Finally, "it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *Jackson*, 443 U.S. at 326.

Here, although the Delaware Supreme Court did not cite *Jackson* when denying Claim Three, it applied a standard that comports with *Jackson*'s. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of Claim Three involved an unreasonable application of clearly established federal law. Petitioner's main complaint about the evidence surrounding his WDDCF conviction is that neither victim specifically identified him as the one of the assailants and that

there was no DNA linking him to one of the masks. The Third Circuit has repeatedly held that "the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). In this case, there was ample direct and circumstantial evidence to prove beyond a reasonable doubt that Petitioner was guilty of wearing a disguise during the commission of a felony. The State provided surveillance video footage of Petitioner at the hospital after the December 15th home burglary demonstrating that he had received treatment for a gunshot wound, along with evidence that blood stains found on the street at the crime scene matched Petitioner's DNA. *See Stevenson*, 2013 WL 6798899, at *1. The male victim testified that there were three people wearing ski masks in his house on the night of the burglary. *Id.* at *4. The female victim testified that she was attacked by a person who was not wearing a ski mask but was wearing a dark hood, and she testified that she found a ski mask left in the house. *Id.* After viewing all of the aforementioned evidence in a light most favorable to the State, the Court concludes that the Delaware Supreme Court's denial of the instant insufficient evidence Claim did not involve an unreasonable application of *Jackson*. Accordingly, the Court will deny Claim Three for failing to satisfy the standard of § 2254(d)(1).

### D.     Claim Four: Ineffective Assistance

In his final Claim, Petitioner contends that defense counsel provided ineffective assistance by failing to discover the existence of Petitioner's 2009 federal firearm conviction, which made Petitioner eligible for sentencing as a habitual offender. Petitioner appears to argue that, had he known about the possibility of habitual offender sentencing, he may have been willing to accept one of the three prior pleas offered by the State. (D.I. 13 at 8). Petitioner presented this Claim to the Superior Court in his Rule 61 Motion, and the Claim was denied as meritless. *See Stevenson*, 2016 WL 258783, at *2. The Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal. *Id.* at *4. Therefore, Claim Four only warrants habeas relief if the

Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established law governing the instant ineffective assistance of counsel claim is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. Although a court may only grant relief for an ineffective assistance of counsel claim if both *Strickland* prongs are satisfied, a court may deny an ineffective assistance of counsel claim after determining the petitioner made an insufficient showing on just one prong. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *see also United States v. Parker*, 621 F. App'x. 109, 110 (3d Cir. 2015) ("We need only negate one prong to reject a *Strickland* claim.").

Finally, to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court cited and applied the *Strickland* standard in denying Claim Four. *See Stevenson*, 2016 WL 258783, at \*2. Given these circumstances, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of Claim Four as meritless involved an unreasonable application of the *Strickland* standard. When performing this inquiry, the Court must review the Delaware Supreme Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens. *See Harrington*, 562 U.S. at 105. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

Here, the Delaware Supreme Court denied Petitioner's ineffective assistance allegation as meritless after focusing only on the prejudice prong of the *Strickland* standard, explaining that,

> [Petitioner] cannot show that there was a reasonable probability he suffered prejudice because of Trial Counsel's failure to discover the federal conviction. With some exceptions not applicable here, under 11 *Del. C.* § 4214(a), any person who has committed three felonies and commits a fourth felony can be declared an habitual offender,

subjecting that person to enhanced sentencing. Under this enhanced sentencing, the statutory maximum for the fourth offense becomes the minimum for that offense, and the maximum becomes life in prison. Under 11 *Del. C.* § 4215(b), as soon as it appears to the State or the court that § 4214 should be applied, the State must file a motion to have the defendant declared an habitual offender. The State has discretion whether to seek sentencing under § 4214.

[Petitioner] was eligible for habitual offender sentencing because of his three prior felony convictions. Even if he had accepted the State's plea offer, the State would have been free to seek habitual offender sentencing. The State never suggested that it would not seek sentencing under § 4214 as part of its plea offer. It is also doubtful that the State would have agreed to the plea offer once it learned of the third felony conviction. Those offers were made before the State knew habitual offender sentencing was a possibility. It is also unlikely that [Petitioner] would have accepted a plea deal even if he had been aware of his habitual offender status because [Petitioner] "was not remotely interested" in accepting the plea he was offered. His attempt mid-trial to solicit a six-year plea demonstrated his failure to appreciate the severity of the charges he was facing.

The Superior Court thoroughly considered these facts and concluded that [Petitioner] failed to show prejudice. Prejudice exists only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Because it was unlikely [Petitioner] would have accepted a plea offer under any circumstances, and he could have been sentenced as an habitual offender even if he had, there was no "reasonable probability" of a different outcome.

[Petitioner] also argues that because he was not aware of the possibility of habitual offender sentencing, had he taken the State's plea offer, the State would have been bound not to seek sentencing under § 4214. According to [Petitioner], this is because the material difference between the State's offer and habitual offender sentencing would have rendered his plea less than "knowing and intelligent" if the State sought habitual offender sentencing.

[Petitioner's] argument is premised on a hypothetical scenario where [Petitioner] accepted the State's plea offer, which did not happen. [Petitioner] ignores the fact that when the State made its plea offer, it was as ignorant as he was of the prospect of sentencing under § 4214. As discussed above, the State would not have agreed to the plea bargain if it had known about the federal conviction. The State could likely have retracted its plea offer at any time before

> [Petitioner] actually entered a guilty plea. [Petitioner], too, likely
> would have been allowed to withdraw his guilty plea. Allowing
> withdrawal of the plea would solve the problem of the plea not being
> "knowing and intelligent," but would be of no help to [Petitioner]
> because it would not require that the State forego habitual offender
> sentencing. Further, the likelihood that [Petitioner] or the State
> would have sought to withdraw a guilty plea undermines
> [Petitioner's] *Strickland* argument, which would require that the
> plea not be withdrawn. [Petitioner] has therefore failed to show that
> there was a "reasonable probability" that the outcome of his case
> would have been different. The Superior Court therefore did not
> abuse its discretion when it denied the motion.

*Stevenson v. State*, 132 A.3d 1 (Del. 2016).

After reviewing the record, the Court concludes that the Delaware Supreme Court's decision was not based on an unreasonable application of *Strickland.* To begin, the Delaware Supreme Court did not unreasonably apply *Strickland* by denying Claim Four after only considering the prejudice prong of the *Strickland* standard. *See Strickland*, 466 U.S. at 670 (explaining "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").

Moreover, when, as here, the alleged "ineffective advice led not to an offer's acceptance but to its rejection, [ h]aving to stand trial, not choosing to waive it, is the prejudice alleged." *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012). "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. For the following reasons, Petitioner has failed to establish prejudice.

First, Petitioner does not actually assert that he would have accepted one of the State's earlier three plea offers had he known about his eligibility to be sentenced as a habitual offender. Rather, he vaguely asserts that he would have "been willing to accept a reasonable plea offer," without identifying his concept of "reasonable." (D.I. 3 at 10)

Second, even though Petitioner asked defense counsel to re-engage in plea negotiations after the State disclosed Petitioner's federal firearm conviction and the fact that Petitioner may be eligible for habitual offender sentencing, Petitioner asked defense counsel to pursue an offer that contemplated a six-year jail term. (D.I. 22-6 at 59). Petitioner's act of asking defense counsel to pursue this option after becoming aware of his potential treatment as a habitual offender demonstrates that Petitioner would not have accepted any of the State's earlier three plea offers that contemplated a penalty range of 14-117 years.[8] Defense counsel's affidavit in response to Petitioner's Rule 61 Motion also demonstrates that Petitioner would not have accepted any of the original three plea offers, because defense counsel asserts that Petitioner "was not remotely interested in accepting the plea offers extended by the State as he thought the penalties were too excessive." (D.I. 22-6 at 61).

Finally, Petitioner cannot show that, once the State became aware that Petitioner was eligible for habitual offender sentencing, his conviction or sentence under a plea offer would have been less severe than the judgment and sentence that was actually imposed. The State's letter response to Petitioner's Rule 61 Motion explicitly asserts that "there was no plea available once

---

[8] The State made plea offers to Petitioner on three separate occasions, and he rejected each offer. (D.I. 22-7 at 9). Each plea offer consisted of six felonies, a pre-sentence investigation with open sentencing, and an agreement that Petitioner would identify and testify against his co-conspirators. *Id.* The penalty range for the offenses to which Petitioner would have pled guilty was 14 to 117 years. *Id.*

the State learned the Defendant was habitual – and the [prior three] plea agreements never offered to waive an unknown habitual status in consideration for accepting guilt." (D.I. 22-6 at 65).

Thus, based on the foregoing, the Court concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of the *Strickland* standard, because Petitioner has not shown that: (1) but for defense counsel's failure to learn about the federal conviction that made Petitioner eligible for habitual offender status, Petitioner would have accepted one of the State's earlier three plea offers he previously rejected; and (2) the State would have made the same plea offer after learning of Petitioner's federal firearm conviction that made him eligible for habitual offender sentencing. Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d)(1).

## IV.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Petitioner's Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.